Joe SINGLETON, Therese Maureen Singleton, Georgia Trotter Singleton, Nancy Clemmons Marco, and Martha Clemmons Doherty, Appellants,

v.

George E. DONALSON III, Appellee.

No. 09–02–500 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 3, 2003.

Decided Sept. 25, 2003.

Rebecca R. Walton, Kountze, for appellant.

Kurt M. Andreason, Louis M. Scofield, Mehaffy & Weber, Beaumont, for appellee.

Before McKEITHEN, C.J., BURGESS and DAVID B. GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

In 1976 Ruth Hooks Donalson executed a will devising a life estate in her separate property to her husband, George Donalson III, with a "reversionary interest" to other specified relatives. She died in 1977, and her will was probated the same year. A dispute arose between George and the holders of the "reversionary" interests over certain royalties and bonuses from the oil and gas produced from the estate property. Appellants[1] argue that the roy-alties and bonuses are corpus of the estate, and that the will does not grant George the power to consume or dispose of the corpus. Appellants sued George for waste of the estate's assets, conversion, breach of fiduciary duty, fraud, and debt. The trial court granted George's motion for summary judgment. Appellants ask this Court to reverse the judgment.

A trial court may grant a summary judgment motion when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). The motion here essentially turns on two grounds, both of which appellants challenge on appeal. The trial court did not specify the ground on which summary judgment was granted. We will affirm the judgment if either of the grounds is meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001).

 Appellants' first issue attacks the assertion in George's summary judgment motion that the language in Ruth's will gives him the right to consume and dispose of the royalties and bonuses. A court's interpretation of a will is governed by the testator's intent, which is ascertained from the language found within the four corners of the will. *See San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *McGill v. Johnson*, 799 S.W.2d 673, 674 (Tex.1990). If a will is unambiguous, a court may not go beyond the will's specific terms in search of the testator's intent. *Lang*, 35 S.W.3d at 639.

Ruth gave George a life estate, as set out in the following language of the will:

My separate real property, herein-above referred to in III A., *including*

1. Olga Prather Singleton who died in 1999, is the predecessor-in-interest of Joe Singleton, Therese Maureen Singleton, Georgia Trotter Singleton, Nancy Clemmons Marco, and Martha Clemmons Doherty.

fee, surface, minerals, *royalties,* and mixed, and hereby intending to include all the rest, remainder and residue of my estate, not heretofore disposed of, I hereby give, devise and bequeath to my beloved husband, George E. Donalson, III., a Life Estate. My said husband is to enjoy the use and *benefits* of *said properties,* including the income derived from said properties, said income to become his separate property as paid. As stated, my said husband is to enjoy the use and benefits of said properties and to do with *as he sees fit* for the rest of his life, with reversion of the corpus of said properties upon his death as follows:

A. To my beloved niece, Olga Prather Singleton, one fourth (1/4) of the reversionary interest from the life estate left to my husband. Should the said Olga Prather Singleton predecease George P. Donalson, III., then her one fourth (1/4) of said reversionary interest shall vest in the natural children of Olga Prather Singleton, living at the time of the death of George E. Donalson, III., share and share alike[.] (emphasis added).

In similar fashion, the will gives a one-fourth "reversionary interest" each to other nieces, and a one-eighth "reversionary interest" each to a grandniece and grand-nephew.[2] In describing the life estate, the will expressly gives George the right to enjoy the "use and benefits" of that property, including the "income" therefrom. The will further provides that the income becomes George's separate property when paid to him. Significantly, George may "do with [the properties in the life estate] as he sees fit for the rest of his life."

■■■ As a general rule subject to exceptions, a life tenant may not dispose of the corpus of the estate, and oil and gas

royalties and bonuses generally are considered corpus. *See Moore v. Vines,* 474 S.W.2d 437, 439 (Tex.1971); *Clyde v. Hamilton,* 414 S.W.2d 434, 438 (Tex.1967). Exceptions exist. *Hudspeth v. Hudspeth,* 756 S.W.2d 29, 31 (Tex.App.-San Antonio 1988, writ denied). For example, under the open mine doctrine, which is applied only to leases executed by the testator and in effect at her death, royalties and bonuses belong to the life tenant. *Riley v. Riley,* 972 S.W.2d 149, 155 (Tex.App.-Texarkana 1998, no pet.) (citing *Clyde v. Hamilton,* 414 S.W.2d 434 (Tex.1967)). Another exception arises when the testator expressly says otherwise in the will; controlling effect is given to the intent of the creator of the life estate. *See Hudspeth,* 756 S.W.2d at 31.

■■■ Where a will contains a provision that upon a certain contingency an estate given to one shall pass to another, the law favors the first taker. *Id.* at 33. Here, George is the first taker—he "takes" before the remainder interests. The testator's language should be construed so as to grant to the first taker the greatest estate which, by fair construction, the will is capable of passing. *Id.*

■■■ The summary judgment motion asserts that the will gave George a life estate with "additional powers of receiving all income from the mineral and royalty interests," as well as the power of disposition. A will creates a life estate where the language of the will manifests an intention on the testator's part to pass to the first taker a right to possess, use, or enjoy the property during his life. *Miller v. Wilson,* 888 S.W.2d 158, 161 (Tex.App.-El Paso 1994, writ denied). The testator may give a power of disposition with the life estate; this power is not necessarily inconsistent

---

**2.** The use of the term "reversionary," rather than "remainder," suggests life estate terms

were not necessarily used precisely in the will.

with the creation of a life estate. *Edds v. Mitchell,* 143 Tex. 307, 184 S.W.2d 823, 825 (Tex.1945). Where a life tenant has unqualified power to dispose of property during his lifetime, the remainder beneficiaries have no justiciable interest in any property except that which has not been disposed of at the life tenant's death. *In re Estate of Gibson,* 893 S.W.2d 749, 751 (Tex.App.-Texarkana 1995, no writ). The power to dispose of the property in the life estate does not necessarily divest the remaindermen of all title or right to the proceeds derived from the sale of the property. Unless otherwise provided in the will, whatever is not disposed of when the life tenant dies will pass to the remaindermen. *Edds,* 184 S.W.2d at 825–26.

■ In determining whether Ruth's will gives George the power of consumption and disposition of royalties and bonuses, we are to give words their normal meaning in light of the testator's intent. *See Barker v. Rosenthal,* 875 S.W.2d 779, 781 (Tex.App.-Houston [1st Dist.] 1994, no writ). Under this will, George "is to enjoy" the described property's "use and benefits," including "income," and is to "do [with the property] as he sees fit for the rest of his life." Ruth specifically included "royalties" in describing the property she was giving to George. Although appellants argue the word "income," as used in oil and gas law, does not include royalties and bonuses, we must look to the meaning of the word in the context of this will. The term "benefits," which the will says includes "income," describes advantages flowing from the life estate property, such as income, rents, bonuses, revenues, and royalties. As used in the will, neither "benefits" nor "income" has a specialized or technical meaning. Further, the will imposes no limitation on George's use of the "benefits" during his lifetime, and the will contains no instructions to impound

bonuses or royalties for the sole use of the remaindermen.

In *Hudspeth,* the San Antonio court of appeals considered the extent of the powers of a life tenant in the context of a will. *Hudspeth,* 756 S.W.2d at 29. The husband willed his wife "all rents, revenues and income of every kind and character derived from the real estate belonging to [him] at the time of [his] death during the span of [his wife's] natural life, or until her marriage." *Id.* at 30. The will provided that after payment of debts against properties in the estate, "the balance of said rental payments shall be the sole and separate property" of the wife "to apply as in her judgment may seem wise and proper." *Id.* The trial court construed the *Hudspeth* will to give the wife a life estate entitling her to receive and retain all income of every kind from the realty, including mineral lease bonuses and royalties.

The Hudspeth children contended they were entitled to the royalties and bonuses as a matter of law, because as a general rule royalties and bonuses are part of the corpus and a life tenant has no right to consume them. *Id.* at 31. The San Antonio court indicated this general rule should be applied *unless* a contrary intent appeared in the instrument creating the life estate. *Id.* at 32. Construing the will's language, the court concluded the devise expressly directed that the wife (life tenant) could do what she deemed "wise and proper" with any and all income from the realty, and with no requirement to impound royalties and bonuses. Further, the court said the word "income" was not used in a strictly legal sense. The wife's conduct in consuming the bonuses and royalties was held to be in accord with the testator's intent.

Similarly, in this will the phrase "to enjoy the use and benefits of the property," and the language to "do with [the

property] as he sees fit," indicate George may enjoy the use and benefit of the royalties and bonuses as he sees fit until his death. His power of disposition limits appellants' rights. *See Montgomery v. Browder,* 930 S.W.2d 772, 777 (Tex.App.-Amarillo 1996, writ denied). George's conduct in using the bonuses and royalties for his benefit is in accord with the testator's intent as expressed in her will. The trial court did not err in granting the summary judgment.

Given our disposition of issue one, we need not address issue two. The summary judgment is affirmed.

AFFIRMED.